ANDREW MAST (CSBN 284070)
GABRIEL MARTINEZ (CSBN 275142)
MICHAEL RABKIN (ILRN 6293597)
ALBERT SAMBAT (CSBN 236472)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
michael.rabkin@usdoj.gov
Telephone: (415) 934-5300

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 14-CR-00534-CRB-2 |
| v. | **UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §5K1.1** |
| RAYMOND A. GRINSELL, | |
| Defendant. | |

The United States respectfully requests that this Court sentence defendant RAYMOND A. GRINSELL to (1) serve 19 months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $20,000, a $200 special assessment, and $156,147 in restitution. This sentencing recommendation is based on the government's motion for a downward departure of 20 percent from the low end of the Guidelines range for substantial assistance and is consistent with the parties' plea agreement.

U.S.' SENT'G MEMO                     1
*United States v. Grinsell*, 14-CR-00534-CRB-2

# BACKGROUND

Defendant Raymond A. Grinsell is charged with participating in the San Mateo County conspiracy, beginning no later than August 2008 and continuing until January 2011, and in the San Francisco County conspiracy, beginning no later than November 2008 and continuing until January 2011. Presentence Report ("PSR") ¶ 15. Grinsell was a member of the "Big 5"—a group of five bidders that were the most powerful at the auctions and effectively controlled the bid-rigging scheme[1]—and was involved in rigging a substantial number of properties at the auctions. *Id.* ¶¶ 8, 15, 17.

Grinsell first began attending the foreclosure auctions in the 1980s. *Id.* ¶ 16. Although he attended sporadically, he became aware of, and participated in, bid-rigging agreements, including bid-rigging agreements with co-conspirator Joseph Giraudo. *Id.* Grinsell understood his conduct was illegal, and in the late 1990s, Grinsell intended to stop participating in bid-rigging agreements after hearing that an auction participant was being investigated by the San Mateo County District Attorney's Office. *Id.* However, he began partnering with Giraudo regularly. *Id.* At some point, Giraudo told Grinsell that he owed him money, and showed him a list of payments. *Id.* Although Grinsell never paid Giraudo, at that point, Grinsell understood that Giraudo had been involved in bid-rigging agreements pertaining to properties they purchased together. *Id.* Going forward, Grinsell knowingly began participating in bid-rigging agreements. *Id.*

Grinsell continued to partner with Giraudo and in 2008, Mo Rezaian began partnering with them. *Id.* ¶ 17. Shortly thereafter, Rosenbledt and Cullinane joined, thereby forming the Big 5. *Id.*

As a member of the Big 5, Grinsell was regularly involved in bid-rigging agreements. For example, at an auction for a property located at 1343-1345 Guerrero Street in San Francisco, Grinsell offered to pay co-conspirator Kuo Chang $5,000 to stop bidding on the property. *Id.* Chang and co-conspirator Lydia Fong accepted Grinsell's offer because they knew if they did not accept the offer, they would be outbid. *Id.* After Grinsell received the deed to the property,

---

[1] The Big 5 has also been referred to as "the group," the "board of directors," and in other similar terms that distinguish this particular group from the broader group of conspirators. PSR ¶ 17.

Grinsell called Fong and told her that the money was available. *Id.* Fong and Chang drove to Grinsell's office, where he met them outside and handed them fifty $100 bills. *Id.*

Grinsell also accepted payments not to bid. *Id.* ¶ 18. For example, at an auction for a property located at 2094 46th Avenue in San Francisco, co-conspirators Keith Goodman and Craig Lipton agreed to pay Rezaian, Giraudo, Chung and Grinsell $9,000 not to bid against them. *Id.* Rezaian, Giraudo and Chung each received $2,000; Grinsell received $3,000. *Id.*

Ultimately, Grinsell was involved in rigging approximately 150 properties. PSR ¶ 19. His total volume of commerce is $28,660,909.[2] *Id.* His volume of commerce does not account for the 61 properties in which Grinsell received money not to bid. *Id.* Grinsell personally received more than $150,000 in payments not to bid. *Id.*

On October 22, 2014, Grinsell was charged by indictment with two counts of bid rigging and five counts of mail fraud. *Id.* ¶ 1. On October 17, 2017, Grinsell pleaded guilty to the bid rigging counts and began cooperating with the government's investigation.[3] Dkt. 273.

## ARGUMENT

### A. Sentencing Guidelines Calculations

#### 1. Criminal History

In Paragraph 12 of the plea agreement, the parties agree that Grinsell's Criminal History Category is determined by the Court. The Presentence Report (PSR) calculates Grinsell's Criminal History Category as I, based on no criminal history. PSR ¶¶ 38-41.

#### 2. Offense Level

The PSR calculates the total offense level as 17, consistent with the plea agreement. PSR ¶ 36. This calculation includes a one-level increase to the base offense level of 12 for conduct involving the submission of non-competitive bids, a four-level increase for a volume of commerce exceeding $10 million, an upward adjustment of three levels for Grinsell's role in the offense, and a downward reduction of three levels for acceptance of responsibility. PSR ¶¶ 26-

---

[2] In his plea agreement Grinsell stipulated to a volume of commerce between $10 million and $50 million. Unlike most of the other pleading defendants, the precise volume of commerce has not been agreed upon.

[3] On October 13, 2016, the mail-fraud counts against Grinsell were dismissed on the government's motion. Dkt. 178.

36; U.S. Sentencing Guidelines Manual ("U.S.S.G.") §§2R1.1(b)(1), 2R1.1(b)(2)(A), 3B1.1(b), and 3E1.1(a) (U.S. Sentencing Comm'n 2016).

Under the Sentencing Guidelines, an offense level of 17 and Criminal History Category of I results in a sentence ranging from 24 to 30 months of imprisonment.

### 3. Fine and Restitution

The PSR calculates a fine range of $286,609 to $1,433,405.  PSR ¶ 81; U.S.S.G. §2R1.1(c)(1) (fine range shall be from one to five percent of the volume of commerce, but not less than $20,000).  In the plea agreement, the government agreed to recommend a fine between $20,000 and $200,000.  Dkt. 273.  In conjunction with its custodial recommendation, the government recommends a $20,000 fine.

The parties have agreed in Paragraph 11 of the plea agreement that restitution is $156,147.  *Id.*

### B. Basis for Role in the Offense Adjustment

Pursuant to Paragraph 8 of his Plea Agreement, Grinsell agrees that a three-level enhancement for his role in the offense is warranted.  The Guidelines provide that if "the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants," a three-level enhancement should be applied.  U.S.S.G. §3B1.1(b)

Here, the conspiracy plainly involved more than five participants; 23 have pleaded guilty. Moreover, Grinsell's role shows that a manager/supervisor enhancement is necessary.  PSR ¶ 19. Grinsell was one of Giraudo's first primary partners and participated in a substantial number of bid-rigging agreements.  *Id.*  Additionally, as a member of the Big 5, Grinsell's requests for payments from other bidders were backed by the substantial capital controlled by the Big 5.  *Id.* Thus, when Grinsell offered $5,000 to stop bidding, Kuo Chang and Lydia Fong felt forced to accept Grinsell's offer because they knew if they did not accept the offer, they would be outbid. *Id.*

//

//

However, the four-level enhancement designated for an "organizer or leader of a criminal activity" is not warranted. *Id.* Although Grinsell played a prominent role in the conspiracy, as discussed above, he did not have the same level of influence as Giraudo. *Id.*

For the foregoing reasons, a three-level upward adjustment for Grinsell's role in the offense is warranted.

### C. Basis for Downward Departure for Substantial Assistance

Pursuant to Section 5K1.1 of the Guidelines, the government moves for a downward departure for substantial assistance to the investigation. The government recommends a 20 percent reduction from the low end of the Guidelines range of 24 months, resulting in a sentence of 19 months.

The timing, significance, nature and extent of Grinsell's cooperation warrant a 20 percent reduction. Grinsell was among the last individuals to plead guilty, and his October 2017 guilty plea occurred approximately three years after he was indicted. Pursuant to his Plea Agreement, Grinsell provided a candid interview with the FBI over two days in December 2018. During his interview, Grinsell provided corroborating information, as well as some new information, regarding the operation of the conspiracy, the conduct of other conspirators, and various bid-rigging agreements.

For these reasons, a 20 percent downward departure for substantial assistance to the investigation and prosecution of these cases is appropriate.

### C. Sentencing Recommendation

The government's recommendation of 19 months is reasonable and not greater than necessary in light of the factors articulated in 18 U.S.C. § 3553. The Court's sentence must reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence to future bid-rigging offenses and white-collar crime generally.

Given the magnitude of the financial harm caused by Grinsell's conduct, the government's recommendation, which includes a custodial term, is appropriate and consistent with the commentary in the applicable Guidelines. The commentary makes clear that "prison terms for [Antitrust] offenders should be . . . common" and "alternatives such as community

confinement [should] not be used to avoid imprisonment of antitrust offenders." U.S.S.G. §2R1.1, cmt. n. 5 & Background.  Given Grinsell's substantial assets, a fine alone—in the absence of a custodial term—would not serve as a just punishment.

This was a serious, far-reaching crime.  Grinsell was a member of a criminal conspiracy that corrupted a fair and competitive process meant to compensate mortgage holders, homeowners, and other beneficiaries following a home foreclosure.  Instead, that process was exploited for the personal enrichment of Grinsell and his coconspirators.  Moreover, Grinsell's participation in the conspiracy was aggravated by the fact he was one of the members of the Big 5, the group that orchestrated the bid-rigging conduct at the courthouse steps and was directly responsible for recruiting newcomers into the conspiracy.

Also relevant to the seriousness of Grinsell's offense is the scale of his participation.  Grinsell participated in rigging approximately 150 auctions, which is far more than most other participants in the conspiracy.  The total bid-rigging payoffs on those properties where Grinsell suppressed competition was over $1 million—money that was divvied up as the fruits of the conspiracy rather than paid to the rightful beneficiaries.  This conduct was especially harmful given its opportunistic timing during the foreclosure crisis in the late 2000s, when the integrity of the financial system was in jeopardy and required governmental intervention.  It bred distrust in the auction process and discouraged investors outside of the conspiracy from attending the auctions to purchase foreclosed properties in what is typically a high-demand real estate market.  Finally, Grinsell, as a member of the Big 5, carried out his crime on over a hundred occasions at or near the steps of various county courthouses, sometimes when law enforcement was nearby.  The government urges the Court to consider the brazen nature of this criminal conduct in imposing an appropriate sentence.

The proposed sentence also takes into account the need for deterrence.  The Sentencing Reform Act notes that for white-collar crimes, "the heightened deterrent effect of incarceration and the readily perceivable receipt of just punishment accorded by incarceration were of critical importance."  S. Rep. No. 98-225, at 91-92 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3274-75.  This is especially true for antitrust crimes, which are often hard to detect, taking place in the

context of conspiracies that leave few physical clues. In this case, the investigation into the corruption at the foreclosure auctions took years to piece together. The potential for evading law enforcement and the resources required to investigate and prosecute such a conspiracy increases the need for tangible penalties to serve as a deterrent; otherwise, the potential financial upside and low likelihood of getting caught makes engaging in this type of criminal conduct even more enticing. The pervasive nature of this conspiracy also increases the need for deterrence. Dozens of investors thoroughly corrupted the auctions in multiple counties for over two years, recruiting new members, intimidating newcomers, and assuming—as Grinsell likely did—that they would never be held accountable for rampant bid rigging. Sentences commensurate with the Guidelines—based on a conservative measure of the harm caused by this conduct—will send a clear message across the industry that bid rigging is unacceptable.

Probation recommends a dramatic variance from Grinsell's Guidelines calculations that would cut his term of incarceration down to just one third of the low end of the Guidelines range. As discussed above, a variance is not warranted, especially given the magnitude of the financial harm caused by Grinsell's conduct. Grinsell was a principal member of the conspiracy who participated in a high volume of rigged auctions. A 19-month sentence adequately reflects Grinsell's history and characteristics, including his eventual decision to accept responsibility and his willingness to pay restitution and cooperate in the investigation, while also accounting for the seriousness of the offense and the need to provide adequate deterrence.

//
//
//
//
//
//
//
//
//

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court grant the government's motion for a downward departure of 20 percent from the low end of the Guidelines range for substantial assistance and sentence defendant Raymond A. Grinsell to (1) serve 19 months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $20,000, a $200 special assessment, and $156,147 in restitution.

Dated:  April 19, 2018                                Respectfully submitted,

/s/
MICHAEL RABKIN
Trial Attorney
United States Department of Justice
Antitrust Division